UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-22738-Civ-MORENO/SIMONTON

JASON A. PELLON, DANNY           )
BALLADARES, IVAN PEREZ, JAMES    )
GONZALEZ, FRANDCEAU DUJOUR,      )
JOEL CRUZ, REAZUL ANSARI, LARRY  )
BUTLER, PEDRO LUIS PEREZ, ADRIAN )
HUSSAIN, JORGE RODRIGUEZ, ALFRED )
EDWARDS,                         )
                                 )
    Plaintiffs and all others similarly  )
    situated under 29 USC 216(B),    )
                                 )
v.                               )
                                 )
BUSINESS REPRESENTATION          )
INTERNATIONAL, INC.,             )
JOSEPH C. LORENZO,               )
                                 )
    Defendants.                  )
_____ )

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## (WITH INCORPORATED MEMORANDUM OF LAW)

Defendants, BUSINESS REPRESENTATION INTERNATIONAL, INC. ("BRI") and JOSEPH C. LORENZO ("Lorenzo") [hereinafter collectively referred to as "Defendants"], by and through their undersigned counsel, pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L.R. 7.5, hereby move for summary judgment.  In support of this motion, the Defendants incorporate a memorandum of law and file contemporaneously herewith a Statement of Undisputed Facts, with supporting declarations and deposition excerpts.  Defendants respectfully request that the Court enter summary judgment in favor of the Defendants, and dismiss the Plaintiffs' claims with prejudice.

## MEMORANDUM OF LAW

### A.      Background

The Plaintiffs are employed as skycaps.  They perform porter and curb-side check-in services at Miami-Dade International Airport ("MIA") for American Airlines passengers.  The

Defendant BRI employs the Plaintiffs to provide skycapping services to American Airlines passengers departing from MIA.  Twelve Plaintiffs originally filed this collective action.  The Plaintiffs moved to amend the complaint eight times to add additional plaintiffs.  There are now fifty-three (53) plaintiffs.   The Plaintiffs allege numerous claims arising under both federal and state law.   Each Plaintiff seeks backpay for federal minimum wage violations under the following theories:

1.      Plaintiffs' contend that the notice of the tip credit failed to include certain necessary information and, hence, the tip credit is invalid.  Defendants contend that the skycaps were provided adequate notice.

2.      Plaintiffs contend that they performed tipped and non-tipped work for some portion of their work day, thus invalidating the tip credit.  Defendants contend that the tasks skycaps performed were a normal and customary part of a skycap job for which they received tips in sufficient amount to satisfy the federal minimum wage law.

3.      Plaintiffs contend that because American Airlines charged passengers $2 per bag for curbside check in, the skycaps' tips were reduced.  Ergo, the employer was effectively taking the skycaps' tips in contravention of the tip retention requirement necessary to claim the tip credit.  Defendants contend that the $2 per bag fee was a nondiscretionary charge (i.e., not a tip) imposed by American Airlines, and thus irrelevant to the tip credit.  Further, the wages paid, and the actual tips skycaps received, were more than sufficient to satisfy the minimum wage requirements.

Plaintiffs contend that they were not paid the wage required under the Miami-Dade County Living Wage Ordinance.  The Ordinance provides no applicable private cause of action; and, even it did, skycaps are excluded from the Ordinance.  The Plaintiffs contend that they perform certain tasks that are outside the exclusion contained in the Ordinance.  Again, the skycaps performed only tasks that are a regular part of a skycap job within the exclusion.  The performance of other tasks required by the job, if any, would not invalidate the exclusion.  Further, there are no allegations against Defendant Joseph Lorenzo that would make him a proper defendant on this claim.

The Plaintiffs contend that BRI promised to pay skycaps 50¢ per bag checked into the American Airlines baggage tracking system.  The Plaintiffs were informed that the incentive plan would commence only after the baggage tracking system was adequate to determine the number

of bags checked by each skycap, which occurred after the Plaintiffs were notified that the program had been curtailed.  Further, the claim is not within the supplemental jurisdiction of this Court.  Finally, Plaintiffs allege no facts against Defendant Joseph Lorenzo that would make him a proper defendant on this claim.

**B.      The Plaintiffs were properly compensated under the FLSA**

The purpose of the Fair Labor Standards Act was to protect employees from sub-standard wages and oppressive hours.  E.g., Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352 (11th Cir. 1982).  These interests are not implicated in this case.  The Plaintiffs are compensated far above the levels which might trigger liability under that Act, and the Plaintiffs have abandoned any claim for underpayments attributable to overtime.  The statute fails to define the scope of any particular job.

**1.      BRI is entitled to claim the tip credit**

Prior to July 24, 2007, the federal minimum wage was $5.15.  However, employers can pay a lesser amount to employees in tipped positions.  They can pay a reduced wage (no less than $2.13) as long as the difference is made up in tips.  This is referred to as the "tip credit."

The FLSA mandates that certain employees be paid a minimum of $5.15 per hour. 29 U.S.C. § 203(m). However, tipped employees, like skycaps, are exempt from this mandate provided the employer meets certain requirements.  The tip credit is the mechanism created by 29 U.S.C. § 203(m) which "allows employers to use a portion of the employee's tip income to supplement its minimum wage obligation to the employee, so long as the combined cash wage and tip income meets or exceeds the minimum wage." Davis v. B& S. Inc., 38 F. Supp. 2d 707, 711 (N.D. Ind. 1998).

The tip credit is technically not an exemption.  The tip credit is embodied in the definition of the required minimum wage set forth in 29 U.S.C. § 203(m).  The distinction is important.  Exemptions are strictly construed against the employer whereas, under Eleventh Circuit law, definitions are given a more even-handed construction.  Anderson v. Cagle's, Inc., No. 06-10306 (11th Cir. 2007) (unlike FLSA exemptions contained in Section 213, definitions set forth in Section 203 which limit the scope of the key FLSA provisions are construed consistent with their plain meaning, and not interpreted rigorously against the employer).

The relevant portion of 29 U.S.C. § 203(m) states:

In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—(1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.

The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

The foregoing language requires employers to pay employees $5.15 (and tipped employees at least $2.13) per hour.  The analytic process that yields that conclusion is described in <u>Davis</u>, 38 F. Supp. 2d at 711 n.4.  In order to qualify for the tip credit, the employer must: (1) take the tip credit toward the wages of employees who qualify as "tipped employees," (2) demonstrate that the employee had notice of the provisions of subsection(m), and (3) all tips received by such employee have been retained by the employee. <u>See</u> 29 U.S.C. § 203(m).  These conditions are met in this case.

### a.      Skycaps are tipped employees

A "tipped employee" is an employee engaged in an occupation in which he customarily and regularly receives more than $30 per month in tips. 29 U.S.C. § 203(t).  There is no dispute that these requirements are easily met in this case [Statement of Material Facts ¶ 34].   No Plaintiff has taken a contrary position.

### b.      The requirements for "tip retention" have been met

To claim the tip credit, the employee must retain all tips.  There is an exception for tip pooling arrangements, but BRI skycaps do not pool their tips.

All Plaintiffs testified that they were able to keep all tips.  [e.g., Merino, p. 89, l. 21 to p. 90, l. 3 attached hereto as Exhibit "A"], [<u>see also</u> Statement of Material Facts, ¶ 35].  The only issue warranting discussion is the Plaintiffs' contention that American Airlines' imposition of the $2 per bag fee for curbside check in caused a reduction in their tips.  The evidence is undisputed: the fee was nondiscretionary and, hence, not a tip. <u>See</u> 29 C.F.R. § 531.52 (describing

characteristics of a "tip" for purposes of the FLSA).  Skycaps explained to customers that the fee was nondiscretionary, and included no gratuity.  [Statement of Material Facts, ¶ 23].

Plaintiffs' contend that because American Airlines charged a $2 fee for curbside check in, the tip credit is invalid.  The argument is implausible and lacks authoritative support.  Service providers often charge for the services provided to customers by their employees – waiters, bartenders, valets -- without jeopardizing the tip credit.  An adjustment in the price of a service may change the amount of tips earned and the economics of performing the tipped function, but that does not transform the fees into tips.  Provided that the employer supplements the tipped employee's wages if the total compensation falls below the required minimum, the employer can use the tip credit.  But the changed economics results in no loss of the tip credit.

<blockquote>
c.     **Subsection 203 (m) mandates that Plaintiffs have notice that their wages reflect a tip credit**
</blockquote>

To use the tip credit, the employer must demonstrate that the employee had notice of the tip credit.  Kilgore v. Outback Steakhouse of Florida, Inc., 160 F.3d 294, 298-300 (6th Cir. 1998); Davis, 38 F. Supp. 2d at 718.  The notice requirement comes from 29 U.S.C. § 203(m), which provides that before the tip credit is used, "the employee must be informed by the employer of the provisions of [29 U.S.C. § 203(m)]."  There are no Department of Labor ("DOL") regulations interpreting the notice requirement.

Notice to the employee simply requires informing the employees of the statutory provision.  It does not require explaining the tip credit.  "Employers do not have to 'explain' the tip credit to employees, however; it is enough to 'inform' them of it." Chan v. Triple 8 Palace, Inc., 2006 WL 851749 *19 (S.D.N.Y. 2006) (citing Kilgore, 160 F.3d at 298).  The statute requires no "magic words" that must be used in informing the employee of the tip credit.  Use of the term "tip credit" is not necessary; that term is not found in the statute.

In a recent case holding that skycaps were provided with adequate notice of the tip credit, one federal court held that "[the employer] explained to Plaintiffs that they would receive $2.13 per hour, the remainder of their pay would be in tips, and they would work under a tip pooling program.  This explanation is sufficient to satisfy the notice requirement of [Section 203(m)]." Hardwick v. Complete Skycap Services, Inc., CV 04-0088 (D. Ariz. 2005) (citing Kilgore, at 298) (quotation omitted) (unreported decision attached hereto as Exhibit "B").  There is no tip pooling arrangement involved in this case.

The evidence is uncontradicted.  Plaintiffs were informed that they would receive $2.15 (or more) per hour, and that the remainder of their pay would be in tips.  That information was provided to them at least twice per month. [Statement of Material Facts, ¶¶ 38-39].  Plaintiffs in this case understood when they were hired that the job they were applying for was a tipped position.  [Ansari, p. 9, l. 23 to p. 10, l. 19 attached hereto as Exhibit "C"] and [Contis, p. 13, ll. 6-12 attached hereto as Exhibit "D"].  They knew they were tipped employees paid a tipped wage and that tips were an important component of their compensation.  [Ansari, p. 9, l. 23 to p. 10, l. 19 (Exhibit "C")] and [Contis, p. 13, l. 6 to p. 14, l. 18 (Exhibit "D")].  Most Plaintiffs testified that they knew at the time they were hired:  (a) what their starting wage would be; and (b) that they would earn primarily tips.  They knew that their wage was less than the minimum paid other workers because they received tips.  [Ansari, p. 9, l. 23 to p. 10, l. 19 (Exhibit "C")].  Virtually all Plaintiffs had worked as a skycap before working at BRI, and many had previously worked for three to five skycap employers where they were paid on the same basis.

Even if the skycaps missed all pre-employment discussions about wages and tips, their wage and their tips were reflected on each bi-monthly paycheck.  All Plaintiffs testified that their paycheck informed them of their hourly rate, their total wages, the number of hours worked, and the total tips they reported during the pay period. [Alonzo, p. 36, l. 12 to p. 37, l. 4 attached hereto as Exhibit "E"] [See also,  BRI's Corporate Representative René Velazquez, 7/10/07, p. 11, l. 18 to p. 12, l. 19 attached hereto as Exhibit "F"].

> **d.      The Plaintiffs were provided all useful information germane to the tip credit**

Presumably, delivery of a copy of the text of subsection (m) to employees would constitute adequate notice of its provisions, even though that subsection is difficult reading.  No more notice than that is required.  The statute contains no requirement that the employer;  (a) quantify the amount of the tip credit;  (b) explain the subsection or the tip credit to employees; (c) identify which of its employees it considers subject to the tip credit; or (d) indicate employees for whom the employer intends to claim the tip credit.

There are no regulations interpreting the statute's notice requirement.  Cases construing subsection (m) have held that notice can be accomplished by posting. Davis v. B&S, Inc., 38 F. Supp. 2d. 707, 718-19 (N.D. Ind. 1998).  The Department of Labor requires employers to post a

notice which includes certain information germane to the tip credit.  The Wage and Hour Division of the DOL has approved the following language:

> Tip Credit – Employers of "tipped employees" must pay a cash wage of at least $2.13 per hour, if they claim a tip credit against their minimum wage obligation.  If the employee's tip, combined with the employer's cash wage of at least $2.13 per hour do not equal the minimum hourly wage, the employer must make up the difference.  Certain other conditions must also be met.

Wage and Hour Publication 1088.  The publication also requires that the $5.15 minimum hourly wage be posted in large letters.

BRI posted the afore-described tip credit information in a prominent location, at eye level, adjacent to the time clock where employees clock in and clock out each day.  The same information is also posted adjacent to the exception log which all employees must sign each day.  [Statement of Material Facts, ¶ 42].  There is no alternative location where this information could have been given greater exposure. Id.  The size of the text is consistent with the Publication 1088.  The FLSA notice was posted for the entire period relevant to this litigation.  [Statement of Material Facts, ¶¶ 41-42].  The information BRI provides to the skycaps is more complete, and more understandable, than that required by the statute.  [Statement of Material Facts, ¶¶ 41-42].

The above-quoted tip credit information is intended for tipped employees who receive the reduced tipped wage.  Only tipped employees would have use for this information.  It would make no sense for the Department of Labor to require posting of incomplete or inadequate information regarding the tip credit.  If the Department of Labor requires information in addition to the prescribed language be given to tipped employees, there would be little point in requiring the posting of the prescribed language.

The purpose of the notice requirement is to protect the rights of tipped employees.  The information contained in subsection (m) that tipped employees might need to protect their rights is:  (a) if employees' tips are insufficient to raise their compensation levels above the $5.15 per hour minimum, the employer must supplement the paycheck to cover the difference; and (b) the tipped wage cannot fall below a certain floor wage ($2.13), regardless of tips.  The tip credit provisions in the DOL-prescribed notice accomplishes that objective.  The required notice makes sense, and conforms to the letter and the spirit of the statutory provision.

To further protect their rights, employees need to know their hours worked, their wage rate and wages earned, and their tips for the corresponding pay period.    All of that information

is provided to employees on each pay check.  The skycaps receive their paycheck in the control room, which is where the notice of the tip credit is posted.  Perhaps additional information might be useful in situations involving a tip pool, but BRI skycaps do not pool their tips.

The information provided to employees about the tip credit fully meets the letter and spirit of the statute.  The Plaintiffs allege no injury arising from BRI's failure to provide them with information about their wages, or that some positive good might have resulted had they received additional information regarding the provisions of subsection (m).

<blockquote>2. <b>The skycaps' job duties were a normal and customary part of a skycap job – a tipped occupation -- for which they received tips in sufficient amount to satisfy the federal minimum wage law</b></blockquote>

Although Plaintiffs concede that skycaps are tipped employees, and that skycapping is a tipped occupation, they contend that BRI improperly applied a tip credit to those portions of their shift committed to tasks which that they contend were beyond the scope of the tipped occupation.[1]  Plaintiffs apparently contend that their job should be only to stand at the curb, and take a passenger's bags with one hand, and accept a tip with the other hand.  However, the National Mediation Board, the federal agency that supervises labor relations and defines collective bargaining units in the airline industry, has regarded the following as among the "basic responsibilities" of skycaps: (a) transporting passengers' baggage, (b) performing curbside check in, (c) assisting handicapped passengers boarding, deplaning and connecting, and (d) keeping the baggage claim area clean and ensuring the neat and orderly appearance of the baggage and curb

---

[1]    Plaintiffs alleged non-skycap duties include: (a) taking passengers' bags to the TSA for screening; (b) turning on the computer at the start of the shift; (c) clearing the printer when it jams; (d) charging passengers for overweight and extra luggage; (e) rebooting the computer; (f) collecting fees for checked baggage; (g) examining passenger identification documents (e.g, drivers licenses and passports); (h) assisting handicapped passengers who requires a wheelchair or other assistance; (i) stocking skycap podium with ticket jackets and baggage tags; (j) setting up scales near the skycap podium; (k) securing scales at the end of the shift; (l) accounting for the cash received for checked bags; (m) reporting tips at the end of the shift; (n) walking to and from the office inside the airport terminal; (o) walking to and from the time clock to punch in or out; (p) locking up or securing skycap podium at the end of the shift; (q) securing the cart used by skycaps at the end of the day; (r) explaining charges to passengers; (s) explaining the fees assessed to passengers and responding to passengers' questions; and (t) explaining to newly-hired coworker various aspects of the job.  Not all plaintiffs contend they do all these functions, or that all these tasks are outside the scope of a skycaps' job duties.

check-in areas.  In re Air Line Employees Association, Int'l, 6 NMB 703, 714, 1979 WL 30282, **9 (unreported decision attached hereto as Exhibit "G").

The FLSA permits an employer to take the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips, provided such duties are incidental to the regular duties, and are generally assigned to such occupations. 29 C.F.R. § 531.56 (distinguishing between employees assigned dual jobs, such as a waiter who is also employed as a maintenance man, and employees assigned a single, tipped job, which includes incidental duties, such as a waitress who must also toast bread, make coffee, and set tables).  It is undisputed that the tasks about which the skycaps complain are tasks routinely performed by skycaps.  Each task is a normal, regular and customary part of the a skycaps' job duties.  Based on the uncontradicted sworn testimony, skycaps at airports throughout the United States perform these tasks as a regular part of their skycap job.  [Statement of Material Facts, ¶ 18]. Moreover, many of these tasks -- transporting luggage to TSA agents for screening and assisting handicapped passengers -- were performed by many of these Plaintiffs at their former skycap employers where, almost without exception, they were paid a tipped wage. [Statement of Material Facts, ¶ 27].

Plaintiffs base their contention that they perform "non-skycap" job duties on:  (a) persons employed in other classifications and paid a higher wage do some of these same tasks; and (b) local law requires that persons employed exclusively to perform some of these tasks be paid a higher wage.

As argued infra, p. 15-18, skycaps are exempt, are excluded from the Miami Dade County Living Wage Ordinance, and the exemption and exclusion apply even if some portion of the shift is committed to non-exempt job responsibilities.  More importantly, a local ordinance cannot argument the tip credit requirement under the FLSA.

The FLSA's minimum wage provisions do not define job classifications.  The FLSA has no requirement that all persons who do some, or even all, of the same tasks be paid the same wage.  See Townsend v. E.G.-Meridian, Inc., 2005 WL 2978899 *5-6 (W.D. Okla. 2005) (rejecting Plaintiff's argument that because restaurant employed non-tipped persons to act solely as cashiers and solely as telephone order receptionist, tip credit should not apply to portion of shift waitress performed those tasks).

A rule whereby anytime an employer asks a non-tipped employee to assist a tipped employee (e.g., during high volume periods), the employer risks invalidating the tip credit for all employees, is jurisprudentially unsound.  In a modern economy, job duties are fluid, and historically rigid lines between job classifications have long been abandoned.  Every tipped occupation has some aspect of the job which could be performed by persons in non-tipped positions.  See generally, Posely v. Eckard Corp., 433 F.Supp.2d 1287, 1307 (S.D. Fla. 2006) (in affirming FLSA exemption for person who claimed to spend 80% of time performing non-exempt tasks, court reasoned that a contrary holding "could potentially create a FLSA regime whereby an exempt employee could prosecute a FLSA suit each time he or she is asked to perform a non-exempt function that is not strictly part of the job description").  Almost every task a skycap performs, some other non-tipped employee also performs.

The cases that have considered whether a given job falls within the definition of a tipped occupation focus on the level of customer interaction involved in that occupation. See Kilgore, 160 F.3d at 301 (in holding that restaurant hosts were tipped employees, court reasoned that while restaurant hosts were not the primary customer contact, they had more than de minimis interaction with the customer); Myers v. The Copper Cellar Corp., 192 F.3d 546, 550 (6th Cir. 1999) (because salad preparers abstained from direct contact with diners, worked entirely outside the view of restaurant patrons, and damage solely in food preparation or kitchen support work, they could not be validly categorized as tipped employees under FLSA). Customer service positions in which the employee has more than de minimis interaction with customers have been found to be tipped occupations, even where the employees are prohibited from accepting tips directly from customers. See Kilgore, 160 F.3d at 306 (finding restaurant hosts to be tipped employees); Dole v. Continental Cuisine, Inc., 751 F. Supp. 799 (E.D. Ark. 1990) (finding a maitre'd to be a tipped employee).  Only where employees have no customer contact have they been found to fall outside the definition of tipped employees. See Myers, 192 F.3d 546, 550.

The skycap Plaintiffs had more than de minimis contact with passengers.  Many of the duties they seek to exclude from the scope of the job involve customer service.

**a.      All skycap job duties are part of the tipped occupation**

*i.      Transporting luggage to TSA screening locations*

Plaintiffs contend that they sometimes do tasks normally assigned to "blue shirts". "Blue shirts" are BRI non-tipped employees who have several job duties, including moving luggage to

TSA screening stations at the airport.  Plaintiffs contend that when they are deployed to move luggage to or between TSA stations, they are performing non-tipped work, and must be paid the full minimum wage.  One Plaintiff testified that he spent, on average, nine (9) hours performing that portion of his job during his seven (7) hour shift.  [Maldonado, p. 66, l. 17 to p. 70 l. 9 attached hereto as Exhibit "H"].

Transporting luggage to TSA screening locations is a normal and customary part of the duties of skycaps.  [Statement of Material Facts, ¶ 18].  Such work is generally assigned to skycaps by other skycap employers at MIA and at other airports.  Id.  The fact that bag runners also perform some of these functions does not vitiate the tip credit.  Bag runners cannot accept tips, and must be paid a non-tipped waged.  Passengers will not give skycaps tips if the passengers have to carry their own luggage to the TSA.  [Statement of Material Facts, ¶ 19]. Instead, passengers will check in at the ticket counter, or use one of the kiosks.  Id.

### ii.    Providing assistance to handicapped passengers

BRI employs wheelchair agents at MIA who assist American Airlines outbound, inbound and connecting passengers. [Statement of Material Facts, ¶ 26].  Wheelchair agents are paid $11.76 per hour, plus tips. Id.  Based on this fact, Plaintiffs contend that assisting handicapped passengers is beyond the scope of a skycap's job and, hence, not subject to the tip credit.

### iii.    Skycaps provide minimal assistance to handicapped passengers

BRI-employed skycaps have not been required to provide wheelchair assistance to inbound or connecting passengers.  Skycaps assist handicapped passengers who are dropped off at the curb, who can be assisted by either a skycap or a wheelchair agent.  Handicapped passengers assisted by skycaps can check their luggage at the curb or the ticket counter.  The passenger is taken to the wheelchair coordinator (located inside the door at concourse "D"), and assisted thereafter by a wheelchair agent.  [Statement of Material Facts, ¶¶ 31-32].

During the 2006 holiday travel season, skycaps provided wheelchair assistance to outbound passengers, but were paid $11.76, plus tips, for that portion of their shift (plus ten extra minute per wheelchair passenger to account for time necessary to reposition to and from the skycap podium) [Statement of Material Facts, ¶ 30].  The process of recording the time proved to be too cumbersome, and skycaps were thereafter relieved of any responsibilities to provide wheelchair assistance to outbound passengers (except as described above).  Id.

Prior to August 2006, skycaps (excluding skycap captains) were requested to provide assistance to outbound handicapped passengers during high-volume periods, or when wheelchair agents were understaffed due to unanticipated high demand for passenger wheelchair assistance. Beginning August 2006, the practice of requiring skycaps to assist outbound wheelchair passengers was discontinued (except as stated above). [Statement of Material Facts, ¶ 29].

> **iv.** *The tip credit requirements for wheelchair assistance are met*

Persons employed to assist handicapped airline passengers are "tipped employees" for whom payment of a reduced tipped wage is permissible under the FLSA. This is true regardless of whether they are skycaps or wheelchair agents. The fact that local law requires that wheelchair agents be paid a higher wage does not remove the task from the tipped wage occupation for purposes of the FLSA.

Wheelchair agents and skycaps who assist handicapped passengers receive more than the $30 per month required under 29 U.S.C. § 203(t) [Statement of Material Facts, ¶ 33]. In many airports, and at many airlines, the job of skycap includes assisting handicapped passengers with wheelchairs, and tips are customary. The argument can be made two ways: (a) either assisting handicapped passengers with wheelchairs is part of the job of skycap; or, (b) the skycaps performs two jobs, both of which are tipped occupations. The former is the better agreement.

As the National Mediation Board has recognized, providing wheelchair assistance is a normal part of the job of skycap. In re Air Line Employees Association, Int'l, 6 NMB 703, 714, 1979 WL 30282, *9 (Exhibit "G"). Most Plaintiffs worked as a skycap for numerous employers prior to working for BRI. The Plaintiffs testified that in the majority of these skycap jobs, as part of their normal duties, they assisted handicapped passengers (outbound, inbound and connecting). They were tipped employees and were not paid any differently during the portion of the day that they assisted handicapped passengers. [Statement of Material Facts, ¶ 27].

> **v.** *Travel to and from BRI's office at concourse "A" preparing cash reports; reporting tips; and returning to concourse D to clock out*

Plaintiffs contend that the portion of their shift spent traveling to the office and reporting their cash transactions is not activity properly subject to the tip credit. Every tipped employee who handles cash or processes credit card transactions (e.g., waitresses and bartenders) must account for the money collected from customers. Such tasks do not vitiate the tip credit.

Federal law requires that tipped employees report tips.  By law, reporting tips is a part of every tipped occupation.

Airports are large, and pedestrian travel time is part of skycaps' job.  [Statement of Material Facts, ¶ 15]. Because a secured armored vehicle transports the cash to the bank, the office safe where  cash deposits are made must be located in the unsecured area of the airport. [Statement of Material Facts, ¶ 24].  BRI has limited options as to where to put its office.  BRI-employed skycaps serve passengers at concourses "A", "C", "D" and "E". [Statement of Material Facts, ¶ 6]. Regardless of where the BRI office is located, some skycaps will have to walk farther than others.  A skycap, over the course of a shift, walks no more than a parking valet, or a hotel bellman at a large hotel.

Section 4(a) of the Portal-to-Portal Act, 29 U.S.C. § 254(a), exempts from compensation under the FLSA, the time employees spend traveling from the workstation to the time clock to clock out.  Eleventh Circuit law holds that this exemption applies notwithstanding that such travel time is increased due to heightened airport security requirements. Bonilla v. Baker Concrete Const., Inc., 487 F.3d 1340, 1343 (11th Cir. 2007) (holding that employees' time spent traveling on employer's vehicles both before and after security checkpoint is exempt from compensation under the FLSA).   Although this portion of the Plaintiffs' shifts is exempt from compensation under the FLSA, BRI skycaps are nonetheless paid for their complete shift.

**b.**     **Apportioning Plaintiffs' job into its components is unworkable**

All skycap job duties are integrated into one job.   Many tasks are performed simultaneously by the same skycap in a single transaction with one passenger (e.g., checking the bag and collecting the fee).  Plaintiffs concede that apportioning their workday among the various tasks is impossible and impractical.  [Gonzalez, p. 46, ll. 9-24 attached hereto as Exhibit "I"], [Orozco, p. 62, ll, 14-24 attached hereto as Exhibit "J"], [Geneo, p. 34, l. 2 to p. 36, l. 9 attached hereto as Exhibit "K"] and [Matos, p. 37, l. 10 to p. 38, l. 7 attached hereto as Exhibit "L"].

Plaintiffs would apparently have BRI (and presumably all other employers of tipped employees) separately record dozens of time entries and corresponding tasks throughout the day, and calculate pay on a task-by-task basis. This would be an absurd and unworkable result that would invite an unprecedented amount of litigation.  It would ultimately solve nothing; skycaps would then argue that they were performing time-keepers functions (a non-tipped occupation).

The statute and regulation speak in terms of "occupations,"  not in terms of the many tasks that make up those occupations.  The skycaps may not enjoy carrying luggage to the TSA, or collecting and accounting for the cash they receive, or walking through the airport, or assisting handicapped passengers, but these tasks are what skycaps do in airports throughout the United States.  BRI is entitled to take the tip credit with respect to that entire occupation.

### C. Skycaps are exempt from Miami-Dade County's Living Wage Ordinance and, except for services paid with County funds, the Ordinance creates no private cause of action against employers.

Miami-Dade County's Living Wage Ordinance requires that "employees of service contractors at [Miami International Airport] shall pay to all of its employees providing covered services, a living wage [as defined in the Ordinance and subject to cost of living adjustment]." MIAMI, FL., LIVING WAGE ORDINANCE § 2-8.9 (1999) [hereinafter the "ORDINANCE"] (Living Wage Section) (attached hereto as Exhibit "M").  "Covered services" are defined to include not only specified services rendered pursuant to procurement contracts with the County, but also specified services provided for private entities at the airport.

### 1. The Plaintiffs are not "covered employees" under the private cause of action provisions of the Ordinance

The Ordinance contains a private cause of action for certain personnel. By its express terms, the private cause of action can be invoked only by employees of service contractors performing covered services pursuant to procurement contracts with the County.

> **Private right of action against service contractors.** Any covered employee of a service contractor, . . . may . . . bring an action by filing suit against the covered employer in any court of competent jurisdiction to enforce the provisions of this Chapter . . . .

ORDINANCE § 2-8.9 (1999) (Compliance and Enforcement Section) (emphasis added). The limitation on the private cause of action is contained within the definition of "covered employee."

> Covered employee means anyone employed by any Service Contractor, as further defined in this Chapter either full or part time, as an employee with or without benefits that is involved in providing service pursuant to the Service Contractor's contract with the County.

ORDINANCE § 2-8.9 (1999) (Definitions Section) (emphasis added).

Skycaps perform no services pursuant to County contracts; [Statement of Material Facts ¶¶ 3-4] Skycaps are excluded from the definition of a "covered employee." Even if the living

wage Ordinance included skycap services among "covered services" (which, as explained below, it does not), the only remedy would be through an administrative enforcement action, not a private civil suit for damages.

Absent contrary language, ordinances are presumed to contain no private cause of action. See e.g., Ferdinand v. Caribbean Air Mail, Inc., 2002 WL 1907158 (S.D. Fla.) (in ruling that Miami-Dade County Ordinance contained no private cause of action, the court stated that "[h]ad the County intended a judicial remedy in addition to the administrative one, it would have so expressly stated. Indeed, the sections dealing with housing, public accommodations, and contract procurement do expressly provide for private relief)". The living wage Ordinance provides for the creation of an administrative remedy for violations. ORDINANCE § 2-8.9 (1999) (Compliance and Enforcement Section).  Because the Ordinance limits the reach of the private cause of action only to services provided under County contracts, and because skycaps perform no services pursuant to a County contract, the Plaintiffs have no private cause of action against BRI.

### 2.        Skycaps are excluded or exempt from the Ordinance

The Ordinance provides an exclusion or an exemption for skycaps: "The Living Wage shall not apply to employees performing tip-related porter assistance services, including curbside check-in." ORDINANCE § 2-8.9 (1999) (Definitions Section). That language refers to skycaps. A "skycap" is a porter employed at an airport.  The word "skycap" is a portmanteau of the words "sky" and "redcap" (a porter at a railway station).  Plaintiffs refer to themselves as porters, and testified that the terms "porter" and "skycap" are synonyms.  [Ansari, p. 36, ll. 14-24 (Exhibit "C")], [Jorge Diaz, p. 64, ll. 14-16, attached hereto as Exhibit "N"] and [Haque, p. 60, ll. 3-13, attached hereto as Exhibit "O"].  Accordingly, skycapping services are excluded services under the Ordinance.

Plaintiffs may argue that they perform tasks outside the skycap exemption.  All tasks the skycaps perform here are normal and customary duties routinely assigned to skycaps.  [Statement of Material Facts ¶ 18].  Performing curb-side check-in services (which includes processing transactions), and moving passengers' luggage from one place to another (e.g., to TSA screening areas or the ticket counter) are skycap responsibilities.  [Statement of Material Facts ¶¶ 15-16].  These tasks are not incidental or ancillary to the job of a skycap; they are the job of skycap. Even if some tasks performed by skycaps were ancillary or peripheral to that job, that would not vitiate the exclusion or exemption.

CASE NO. 06-22738-Civ-MORENO/SIMONTON

To the extent the Plaintiffs' primary job is that of skycap, with some ancillary duties involving non-exempt tasks, the entire job nonetheless comes within the skycap exemption. The Ordinance governs covered employees' entitlement to a certain amount of pay, similar to the FLSA. Every job exempt from federal, state or local minimum wage laws has some aspect of the job which, if viewed in isolation, would be as non-exempt work. See, e.g., Posely v. Eckard Corp., 433 F. Supp. 2d 1287, 1307 (S.D. Fla. 2006) (in affirming FLSA exemption for person who claimed to spend 80% of time performing non-exempt tasks, court reasoned that a contrary holding "could potentially create a FLSA regime whereby an exempt employee could prosecute a FLSA suit each time he or she is asked to perform a non-exempt function that is not strictly part of the job description").

For good reasons, courts have rejected the concept of "partial exemption." Where employees perform several functions, some exempt, others non-exempt, the court does not attempt to split the employee's hours or minutes between exempt and non-exempt functions. The determinant is whether the primary job responsibilities fall within the exemption. If so, all hours worked are exempt. Depending on the employee's primary job responsibilities, the employee is either exempt, or not exempt, for all hours worked. See Counts v. South Carolina Elec. & Gas Co., 317 F.3d 453, 454 (4th Cir. 2003) (holding that Plaintiffs' status as exempt under Fair Labor Standards Act does not change merely because they perform some nonexempt labor; Auer v. Robbins, 65 F.3d 702, 718 (8th Cir. 1995) ("Determining whether or not an employee falls under the executive exemption requires an analysis of whether his primary duty is management . . . .  this test provides an all or nothing method for determining whether an employee who performs some management and some non-management job duties is entitled to overtime compensation."). By analogy, applicability of the skycap exemption from the Ordinance should depend on the primary duty of the employee for all hours worked, particularly where, as here, the exempt and nonexempt functions cannot be readily and economically be separated. [Statement of Material Facts ¶ 20]. See Baldwin v. Trailer Inns, Inc., 266 F.3d 1104, 1114 (9th Cir. 2001) (in affirming FLSA exemption for person who claimed to spend 90% of time performing non-exempt work, the court rejected rule whereby the application of an exemption is based on how employee spent the majority of his or her time because rule was ill-suited for situations where exempt and nonexempt functions are not clearly severable).

It would be commercially infeasible to require a skycap to record his hours or minutes each time he or she, for example: (a) turns on the computer at the start of the shift; (b) charges passengers for overweight and extra luggage; (c) collects fees for checked baggage; (d) examines passenger identification documents (e.g, drivers licenses and passports), (e) assists a handicapped passenger discharged at the curb who requires a wheelchair or other assistance, (f) reboots the computer, (g) stocks the skycap podium with ticket jackets and baggage tags; (h) records and accounts for the cash received for checked bags; (i) reports tips at the end of the shift (as required by federal law); (j) walks to and from the office inside the terminal to account for the cash received for checked bags;  (k) walks to and from the time clock to punch in or out;  (l) secures the podium at the end of the shift; and (m) explaining to passengers about the $2 fee.  [Statement of Material Facts ¶ 20].  Plaintiffs are contending that each of those tasks is not part of the job of skycap, and therefore, that the skycaps must be paid the living wage for the time-period they are performing these tasks.  All of these tasks are intertwined, and the degree to which skycaps perform them varies day-to-day.  [Id., ¶ 13].  Several skycaps Plaintiffs testified that segregating the proportion of their work day committed to these tasks is impossible.  [Gonzalez, p. 46, ll. 9-24 (Exhibit "I")], [Orozco, p. 62, ll. 14-24 (Exhibit "J")], [Geneo, p. 34, l. 2 to p. 36, l. 9 (Exhibit "K")], [Matos, p. 37, l. 10 to p. 38, l. 7 (Exhibit "L")].  The skycaps testified that they spend most of their day checking in passengers, and assisting them by carrying their luggage to the TSA for screening.  [Maldonado, p. 35, ll. 5-14 (Exhibit "H")].  That is what skycaps do.  [Statement of Material Facts ¶ 15].  The Plaintiffs' primary duty is "tip-related porter assistance services, including curbside check-in."  They are therefore exempt from the Ordinance.

Because the Ordinance contains no applicable private cause of action, and because skycaps are exempt from the Ordinance, the Court must enter judgment in favor of the Defendant on any claims alleging violations of the Ordinance as to the skycaps' compensation.

> **D.**     **The State law contract claim cannot be sustained**

Plaintiffs allege that during the summer of 2006, BRI promised to pay $0.50 for each bag checked by skycaps, and that BRI failed to pay that bonus. The claim fails for two reasons. First, the court lacks supplemental jurisdiction over the claim. Second, the abandonment of the $0.50 bonus was the result of the failure of a condition precedent.

> **1.**     **The Court lacks supplemental jurisdiction over Plaintiffs' claim**

Lack of subject matter jurisdiction may be challenged by either party, or by the Court <u>sua sponte</u>, at any time while the action is pending. Fed. R. Civ. P. 12(h)(3). A federal court must dismiss a case upon determining that it lacks subject matter jurisdiction, regardless of the stage of the proceedings, and facts outside of the pleadings may be considered as part of that determination. <u>Goodman v. Sipos</u>, 259 F.3d 1327, 1331 (11th Cir. 2001).

The Court may exercise supplemental jurisdiction under 28 U.S.C. § 1367 over only those state law claims that arise out of a common nucleus of operative fact with a substantial federal claim. <u>Lucero v. Trosch</u>, 121 F.3d 591, 597 (11th Cir. 1997) (citing <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 724-25 (1996)). The claims must be "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Whether to exercise supplemental jurisdiction over state law claims is inherently a fact-specific inquiry. <u>See, e.g.</u>, <u>Lyons v. Whisman</u>, 45 F.3d 758 (3d Cir. 1995).

Plaintiffs allege that BRI promised to pay $0.50 for each bag checked by skycaps and BRI failed to pay.  The alleged contract for the bonus is unrelated to the Plaintiffs' FLSA claim. The claim is based on an alleged contract, and arises under state law.

In <u>Kirby v. Tafco Emerald Coast, Inc.</u>, 2006 WL 228880 (N.D. Fla. 2006), the Plaintiff brought an action against his employer alleging that the employer had denied him overtime pay and minimum wage compensation under the FLSA.  Tafco answered the complaint and plead two counterclaims based on breach of contract. In declining to exercise supplemental jurisdiction over the state law claim for a breach of contract, the court noted that the FLSA claims dealt only with the question of the number of hours worked and the compensation paid. The court noted that "[t]he issues in the claim for a breach of contract and for failure to pay a promissory note must necessarily involve different and separate factual matters." <u>Id</u>. at *2**.**

Similarly, in <u>Lyon v. Whisman</u>, 45 F.3d 758 (3rd Cir. 1995), the Plaintiff alleged FLSA violations along with tort and breach of contract claims for failure to pay a promised bonus.  The Third Circuit Court held that there was an insufficient nexus between the FLSA claim and the contract claim to justify exercising supplemental jurisdiction over the state claim.  The court reasoned that the only link between the claims was "the general employer-employee relationship between the parties." <u>Id</u>. at 762.  The Court held that this was insufficient.

In this case, as in <u>Lyon</u>, the only link between Plaintiffs' FLSA and claims is the employer-employee relationship between the parties.  <u>See</u> <u>Lecik v. Nost</u>, 2005 WL 3307192 (M.D. Fla. 2005) (holding that the dispute over whether an agreement existed, the terms of the agreement, and whether Defendant complied with the terms of the agreement, were factually distinct from the question of whether Defendant paid the compensation required by the FLSA). The skycaps' contract claims have no meaningful nexus to their FLSA claim.  The federal and state claims have no common facts except the employment relationship.  As the Courts in the previously-cited cases held that is insufficient to confer supplemental jurisdiction over the state claim, the claim therefore must be dismissed.

## 2. The non-occurrence of a condition precedent precludes Plaintiffs' contract claims

Plaintiffs allege that in the summer of 2006, BRI's Vice-President of Operations, Mario Cantero, informed several skycaps at a meeting that BRI would introduce gratuitously an incentive program whereby skycaps would receive an incentive for each bag checked into the American Airlines baggage tracking system. Plaintiffs who attended the meeting were informed that the incentive plan would commence when the baggage tracking system was adequate to determine the number of bags checked by each skycap.  [Statement of Material Facts, ¶ 44], [Ivan Perez, p. 45 ll. 17-18, attached hereto as Exhibit "P"], and [Merino, p. 56, ll. 14-16 (Exhibit "A")].  At that time, the only information provided by American Airlines' information delivery system was the total number of bags checked by all skycaps.  Individualized information would be required to implement the incentive program.

The Plaintiffs testified that they were told that the incentive plan was dependent upon the occurrence of a condition precedent, i.e. the proper augmentation and implementation of American Airlines baggage tracking system.  BRI paid the incentive for August of 2006, while laboring under the erroneous belief that the system was capable of producing reliable information.  The $0.50 bonus was reflected in the employees' paycheck as a bonus in the September 15 paycheck.  The payroll advice or pay stub described the supplemental pay as a "bonus."  [Statement of Material Facts, ¶ 45].

It promptly became clear that the skycaps had subverted the system and were underreporting the number of bags and keeping the $2.00 per bag fee. Mr. Cantero concluded that the information system and related procedures were inadequate to determine with any degree of reliability the number of bags checked by each skycap.  The incentive program was therefore

CASE NO. 06-22738-Civ-MORENO/SIMONTON

curtailed.  The skycaps were promptly informed of this development.  [Statement of Material Facts,  ¶¶ 46-47].

The non-occurrence of a condition precedent discharges any performance obligations.  See F.D.I.C. v. Coleman 611 So.2d 1300, 1302 (4th DCA 1993) (where contract subject to condition precedent, such as happening of some event after a contract is entered into, no performance can be required unless the event occurs) (citing Cohen v. Rothman, 127 So.2d 143, 47 (Fla. 3d DCA 1961)).  Based on the uncontradicted testimony, a necessary condition failed to occur.  Hence, the claim must therefore be dismissed.

E.      **Plaintiffs' claims based on state law must be dismissed against Defendant Lorenzo.**

The Complaint contains no allegations against the Defendant Lorenzo, whereby the state-law based claims can result in judgment against him.  He is an improper Defendant as to those claims.  Therefore, these claims must be dismissed as to Mr. Lorenzo.

F.      **The contract claims of Plaintiffs who discontinued their employment prior to the alleged contract formation must be dismissed**

Plaintiffs Luis Latronoco and William Rose discontinued their employment before any alleged promise to pay a bonus occurred. [Latronica, p. 24, attached hereto as Exhibit "Q"], [Rose, p.14, attached hereto as Exhibit "R"].  Therefore, Messrs. Latronico's and Rose's claims based on contract must be dismissed.

### Conclusion

For the foregoing reasons, the Defendants respectfully request that the Court enter summary judgment in favor of the Defendants, and dismiss the Plaintiffs' claims with prejudice.

**s/ Michael W. Casey, III**
Michael W. Casey, III
Florida Bar No. 141430
mcasey@ebglaw.com
Brian M. Molinari
Florida Bar No. 0963321
bmolinari@ebglaw.com
EPSTEIN BECKER & GREEN, P.C.
Suite 2100, Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Tel: (305) 982-1520
Fax: (305) 982-1521
Counsel for Defendants, Business Representation
International, Inc. and Joseph C. Lorenzo

CASE NO. 06-22738-Civ-MORENO/SIMONTON

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 96-22738-CIV-MORENO/SIMONTON

JASON A. PELLON, DANNY                    )
BALLADARES, IVAN PEREZ, JAMES             )
GONZALEZ, FRANDCEAU DUJOUR,               )
JOEL CRUZ, REAZUL ANSARI, LARRY           )
BUTLER, PEDRO LUIS PEREZ, ADRIAN          )
HUSSAIN, JORGE RODRIGUEZ, ALFRED          )
EDWARDS,                                  )
                                          )
     Plaintiffs and all others similarly   )
     situated under 29 USC 216(B),         )
                                          )
v.                                        )
                                          )
BUSINESS REPRESENTATION                   )
INTERNATIONAL, INC.,                      )
JOSEPH C. LORENZO,                        )
                                          )
     Defendants.                           )
_____ )

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on the 24th day of July, 2007, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing

document is being served this day on all counsel of record identified on the attached Service List

in the manner specified, either via transmission of Notices of Electronic Filing generated by

CM/ECF or in some other authorized manner for those counsel or parties who are not authorized

to receive electronically Notices of Electronic Filing.

s/ Mark J. Beutler
_____

CASE NO. 06-22738-Civ-MORENO/SIMONTON

## <u>SERVICE LIST</u>

**Jason A. Pellon, Danny Balladares, et al. v.
Business Representation International, Inc., et al.**

**Case No. 06-22738-Civ-Moreno/Simonton
United States District Court, Southern District of Florida**

Jamie H. Zidell, Esquire
zabogado@aol.com
J. H. Zidell, P.A.
Suite 605
300 – 71 Street
Miami Beach, Florida  33141
Tel: (305) 865-6766
Counsel for Plaintiffs

[Via Notice of Electronic Filing generated by CM/ECF]