UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE # 06-22738-CIV-MORENO

JASON A. PELLON, et al.,

Plaintiffs,

vs.

BUSINESS REPRESENTATION INTERNATIONAL,
INC. and JOSEPH C. LORENZO,

Defendants.
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION SUMMARY JUDGMENT**

COME NOW the Plaintiffs, JASON A. PELLON, ET AL., pursuant to Fed.R.Civ.P. Rule 56 and SDLR 7.5 and file the above-described Response to Defendants' Motion for Summary Judgment filed on 7/24/07 as follows:

**INTRODUCTION**

Plaintiffs refer to the Introduction set forth in their Motion for Partial Summary Judgment filed on 7/23/07, and state Defendants' Motion for Summary Judgment ought to be denied not only because Plaintiffs Motion for Partial Summary Judgment ought be granted, but because genuine issues of material fact exist as set forth below.  Plaintiffs refer to their Statement of Material Facts Responding in Opposition to Defendants' Motion for Summary Judgment in noting Defendants often relied on the testimony of their own representatives to support their Motion for Summary Judgment; such underscores the dispute of material facts in this case.  Although Plaintiffs believe their Motion for Partial Summary Judgment filed on 7/23/07 should be granted, at the very

1

least this Court should find sufficient material facts to permit a trial on all issues set forth in said motion.

## MEMORANDUM OF LAW

A.   Summary Judgment Standard.

Pursuant to Fed.R.Civ.P. 56, a summary judgment should be granted if, following sufficient discovery, there is no genuine issue of material fact to be decided by a jury; therefore summary judgment is to be granted as a matter of law. *Hoffman v. Allied Corp.*, *et al.,* 912 F.2d 1379, 1383-84 (11th Cir. 1990), *citing, Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  In determining if a genuine issue exists, the court must query whether "a reasonable jury could return a verdict for the nonmoving party…."  *Hoffman v. Allied Corp.*, *et al.,* 912 F.2d at 1383.  *See also, Beal v. Paramount Pictures Corporation*, 20 F.3d 454, 459 (11th Cir. 1994)("Summary Judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law"); *Silas v. Hillsborough County*, 2006 U.S. Dist. LEXIS 79503, *3-4 (M.D. Fla. 2006)(in FLSA matter court found "[s]ummary judgment is proper if following discovery … there is no genuine issue as to any material fact….")

B.   The Tip Credit.

Regarding the tip-credit that BRI seeks to claim, Plaintiffs refers to Subsections B(1) and B(2) of Plaintiffs' Motion for Partial Summary Judgment filed on 7/23/07.

As set forth in Subsection B(1) of Plaintiffs' Motion for Partial Summary Judgment, Plaintiffs state Defendants violated the Notice Requirement.  Plaintiffs have provided on-point case law, testimony from BRI's own representatives and sworn statements from various Plaintiffs to demonstrate Plaintiffs were not provided legally

2

sufficient notice to permit Defendants to claim the tip credit. *See*, *Martin v. Tango's Restaurant, Inc., et al.,* 969 F.2d 1319 (1st Cir. 1992); *Reich v. Chez Robert, Inc.,* 28 F.3d 401, 404 (3rd Cir. 1994); the deposition testimony of Nancy Duran and Renee Leonardo Velasquez ; and various Plaintiffs' Responses to Defendants' Supplemental Set of Interrogatories question 16.

Plaintiffs' argument is largely predicated upon testimony of the Defendants' own representatives which clearly raises a genuine issue of material fact. The defense cannot demonstrate Plaintiffs were aware or understood the ramifications of the tip credit and that Defendants were claiming same. The Court ought to follow the case law provided by Plaintiffs in that such logically comports with the purpose of the notice requirement. Why would Congress put a notice requirement in the FLSA concerning the tip credit? The only logical answer would be Congress obviously wanted employees to be aware of and understand the tip credit.

As set forth in Subsection B(5) of Plaintiffs' Motion for Partial Summary Judgment, the burden is on the Defendants to demonstrate they are entitled to the tip-credit. *See, Melton v. Round Table Restaurants, Inc*., 1971 U.S. Dist. LEXIS 10887, *10 (N.D. Ga. 1971), *citing, Walling v. General Industries Co*., 330 U.S. 545 (1947); *Wirtz v. C & P Shoe Corp.*, 336 F.2d 21 (5th Cir. 1964). In the case at bar, the defense is unable to fulfill its burden to demonstrate Defendants are entitled to the tip credit. The defense in large part relies on the testimony of its own representatives, and cannot make the argument that Plaintiffs were aware BRI was taking the tip credit or that Plaintiffs understood the minimum wage laws.

The defense cites *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294 (6th Cir. 1998) and *Chan v. Triple 8 Palace, Inc.,* 2006 WL 851749 (S.D.N.Y. 2006) in arguing it is enough to "inform" employees of the credit and that no "magic words" are required.  Plaintiffs state that Defendants did not inform Plaintiffs of the credit and used no words at all magic or otherwise; such was undisputedly established by BRI's own representatives as Subsection B(1) of Plaintiffs' Motion for Partial Summary Judgment— at most BRI utilized a poster.  The issue is not whether Plaintiffs knew they were receiving tips as part of their compensation and whether they were aware of their rate of hourly pay (such would be obvious in the performance of the job and receipt of paystubs), but rather whether they were informed of the law and Defendants' intention to take the tip credit.  If the notice requirement merely requires employees to know they receive tips and to be aware of their hourly rate of pay, the notice requirement would be of little importance.

Regarding *Hardwick v. Complete Skycap Services, Inc.*, CV-04-0088 (D. Ariz. 2005), this Court ought not apply *Hardwick* in a manner which contradicts *Martin* and the other case law cited by Plaintiffs.  In *Martin*, the First Circuit found it to be crucial that "the minimum wage or tip credit was never mentioned to the waiters…." *Martin*, 969 F.2d at 1323.  The Court noted that it was not suggested "that the waiters knew anything of the minimum wage laws or defendants' intention to claim a tip credit against their obligations." *Id*.  Thus, the court reversed the district court and ordered a recomputation "with no tip credit allowed." *Id*.  As *Hardwick* quoted *Kilgore*:  "an employer must inform its employees of its intention to take a tip credit toward the employer's minimum wage obligation."  The Court in *Hardwick* was in error to the

4

extent it may have interpreted an employee's knowledge of hourly rate and receipt of tips to be sufficient notice of the minimum wage laws and that the employer was utilizing a tip credit under the FLSA. The case law cited by Plaintiffs makes it clear there must be affirmative action taken by the employer to ensure the employees are informed of and understand the minimum wage law (and be aware the employer is claiming an FLSA tip credit). The Third Circuit noted that the tip credit is barred with regard to an "employer who failed to explain provisions of section 3(m) to employees, even though employer acted in good faith." *Reich v. Chez Robert, Inc.,* 28 F.3d 401, 404 (3rd Cir. 1994), *citing, Bonham v. Copper Cellar Corp.*, 476 F. Supp. 98, 101-102 (E.D. Tenn. 1979).

Plaintiffs similarly argue that *Davis v. B&S, Inc.,* 38 F.Supp.2d 707 (N.D. Ind. 1998) ought not be utilized by this Court to allow Defendants to merely hang a poster without ensuring employees understanding the minimum wage laws and utilization of the tip credit. *Bonham v. Copper Cellar Corp.*, 476 F. Supp. 98, 101-102 (E.D. Tenn. 1979) held that a displayed poster did "not satisfy the notice requirement." *Bonham*, 476 F. Supp. at FN 6. The Court's holding noted that the provisions of the tip credit were not "explained" to the employees, the defendants only verbally made "vague references" and no "specific conversation" regarding the minimum wage. The court noted the evidence did not show "that there existed any program whereby relevant provisions of the Act were explained to all employees."

In addition, Plaintiffs state that *Davis*, which relied on *Kilgore*, makes its clear that *Davis* and *Kilgore* do not provide Defendants sufficient legal authority to overcome their lack of notice. As *Davis* stated, "[i]n *Kilgore*, the defendant employer had provided its employees a "file folder" containing various written materials, including a statement

5

describing the employer's tip policy. This written statement fully quoted Section 203(m), and expressly informed the reader that "tips will be used as a credit against the minimum wage as permitted by federal and/or state law."  *Davis*, 38 F.Supp.2d at 718-19, citing *Kilgore*, 160 F.3d at 298-99. Defendants in the case at bar have not timely provided any information specifically regarding BRI to the individual Plaintiffs for the relevant period, unlike the file folder provided in *Kilgore*. As Paras. 15-20 of Plaintiffs' Statement of Material Fact filed in connection with Plaintiffs' Motion for Partial Summary Judgment makes clear through Defendants' own testimony: the poster BRI had in the control room did not say anything about BRI specifically, (the deposition of the 30(b)(6) representative for BRI, Renee Leonardo Velasquez page 7, lines 16-18); the poster BRI had in the control room did not advise or inform any of the sky caps that BRI intended to use the credit in paying minimum wages to the sky caps, (the deposition of the 30(b)(6) representative for BRI, Renee Leonardo Velasquez page 6, lines 15-20); the manager of the HR department and the people that work in the HR department never informed or advised any of the sky caps over the last three years that BRI intended to take a minimum wage credit utilizing the sky caps tips they made at the airport, (deposition of Nancy Duran HR manager for BRI since 1998, page 12, lines 1-7); on or about May or June 2007, BRI advised Plaintiffs that their tips would be used as part of their minimum wage by BRI via a notice attached to their paycheck, (deposition of the 30(b)(6) representative for BRI, Renee Leonardo Velasquez page 8, lines 7-14.); the 30(b)(6) representative for BRI, Renee Leonardo Velasquez, stated in his deposition that, "Before May or June of 2007, other that the poster, there was nothing else that BRI did to advise the Plaintiffs that their tips would be used as part of their minimum wage by BRI," page 8, lines 15-20;

6

the sky caps were not informed until June 2007 that BRI intended the sky caps tips to factor into the sky caps receipt of minimum wages, (Plaintiff's Responses to Defendants' Supplemental Set of Interrogatories question 16 for Nicholas Contis, Jacques Jean, Luis Mourino, Raimundo Revollo, Walter Guasp, Donald Wilcox, Frandceau Dujour, Juan Matos, and Carlos Puentes.)  Therefore the defense ought not be able to rely on *Davis* or *Kilgore*.

Further, *Davis* indicated notice of the tip credit by way of poster may be satisfactory if the "content of the poster is otherwise sufficient."[1]  Another issue regarding *Davis* is that affidavit testimony was provided in that case which "adequately demonstrate[d] that" there was a conversation with the employee "about the tip credit" and the FLSA. *Davis*, 38 F.Supp.2d at 720.  Such is unlike the case of bar, where as set forth in detail above, Defendants' own testimony unequivocally demonstrates that before May or June of 2007, other that the poster, there was nothing else that BRI did to provide notice to the Plaintiffs.

Even if this Court disagrees with Plaintiffs' aforementioned argument, Plaintiffs refer to Subsection B(2) in of Plaintiffs' Motion for Partial Summary Judgment concerning non-tipped duties performed by the skycaps.  Para. 14 of Defendants' Statement of Material Fact argues there is "no efficient or practical way" for BRI to record or quantify skycaps' tasks and time.   However, as demonstrated by Paras. 4-8 of Plaintiffs' Statement of Material Fact filed in connection with Plaintiffs' Motion for Partial Summary Judgment, the $2 baggage fee and all time spent collecting, recording

---

[1] Plaintiffs also state that, despite various requests, the defense has not produced any of the posters thus far alleged to have been displayed, either to be inspected or copied.  *Davis* noted, citing *Bonham*, that a poster was not sufficient, in part, because "its contents were not introduced at trial."  *Davis*, 38 F.Supp.2d at 719. At this point, BRI's alleged poster (or posters) have not been provided, which leaves further material facts at issue.

7

and depositing was done for ASMO who did not employ Plaintiffs. The $2 baggage fee collected by BRI skycaps provides 100% compensation to Asmo and American Airlines does not have to pay any additional money for the skycap services, (the deposition of Renee Leonardo Valasquez, the vice president and CFO of American Sales and Management, page 27, lines 7-13).  Plaintiffs also note the baggage fee represents significant revenues to Asmo: "from May of '06 through December of '06" Asmo received "[p]robably half a million dollars."  (Deposition of Victor Novoa, the Former Financial Auditor for the Office of the Inspector General's Deposition page 12, lines 14-18).

  Plaintiffs note that such alleged fact provided by Defendants' representatives Lovett and Cantero alleging there is "no efficient or practical way" for BRI to record/quantify skycaps' tasks and time is subject to inquiry.  In addition, Plaintiffs state the jury needs to make such factual determination including whether Defendants should be required to pay minimum and living wages to skycaps under such a scenario; such is directly related to damages as set forth in subsection B(2) of Plaintiffs Motion or Partial Summary Judgment filed on 7/23/07 regarding non-tipped duties performed by the skycaps.  Defendants ought not be permitted to prevail on an argument that because Defendants cannot parcel out the tip versus non-tipped duties Plaintiffs ought not get minimum and living wages.  If BRI wishes to conduct a business which requires its employees to perform non-tipped duties, then BRI ought be required to pay the legally mandated hourly wage.

  Despite Defendants' argument concerning job classifications, as Subsection B(2) of Plaintiffs' Motion for Partial Summary Judgment demonstrates, Plaintiffs have

provided adequate facts and law to show that Plaintiffs are entitled to seek damages for the lack of minimum and living wages which were not paid for Plaintiffs' performance of non-tipped duties.  Plaintiffs also refer the Court to Plaintiffs' argument that the language of the Living Wage Ordinance defines Plaintiffs' position as a curbside occupation: Section 2-8.9 states "[t]he Living Wage shall not apply to employees performing tip related porter assistance services, including curbside check-in."   As set forth in Subsection B(2) of Plaintiffs' Motion for Partial Summary Judgment, Plaintiffs are forced to perform a significant amount of time performing non-tipped duties away from the curb which decreases their ability to earn tips.

Defendants' Motion for Summary Judgment fails to fulfill Defendants' burden to demonstrate entitlement to the tip credit.  In determining if a genuine issue exists, the court must query whether a reasonable jury could return a verdict for Plaintiffs. Although Plaintiffs believe the Court should grant Plaintiffs' Motion for Partial Summary Judgment as a matter of law, at the very least the Court should find that the jury should have an opportunity to hear testimony regarding the tip credit: a jury instruction should be permitted which allows the jurors to determine whether Plaintiffs actually understood and were informed of the tip credit and Defendants' utilization thereof.  In the alternative the jurors should be permitted to determine the percentage of time Plaintiffs spent performing non-tipped duties to permit the damages to be pro-rated accordingly.

Defendants attempt to demonstrate as a matter of law that the various tasks performed by Plaintiffs are all "part of the tipped occupation."  Nevertheless such allegations are all disputed material facts to be decided by the jury at the very least.  With regard to *In re Air Lift Employees Association, Int'l*, 1979 WL 30282) cited by the

9

defense, the actions and testimony of Defendants and their representatives have hoisted themselves by their own pitard.  Defendants argue that *In re Air Lift Employees Association, Int'l* stands for the proposition that wheelchair assistance is a normal part of the job of a skycap.  Nevertheless, Paragraphs 24-27 of the Statement of Material Facts filed with Plaintiffs' Motion for Partial Summary Judgment indicates that the sky caps did the jobs of the wheelchair agents when called upon, and the sky caps were only paid the living wage as employees at Miami International Airport for the time that they were actually pushing a wheelchair, if a ticket was properly filled out, (deposition of Mario Cantero, vice president of operations for BRI, page 35, lines 11-25; page 36, lines 1-11; page 37; lines 8-18-25; page 38, lines 1-10.)  Given that Mr. Cantero qualified his statements with the phrase "if a ticket was properly filled out", Plaintiffs believe there were various instances where such a prorated living wage was not paid.  Therefore, not only are there disputed facts as to whether various Plaintiffs were not paid all entitled living wages, BRI's admitted payment of prorated living wages indicates Plaintiffs were performing non-tipped duties.  In fact, Mario Cantero admitted the following: when the sky caps perform the duties of the "blue shirts," the sky caps are not paid the blue shirt living wage, (deposition of Mario Cantero, vice president of operations for BRI, page 36, lines 19-25; page 37, lines 1-7).  Thus, BRI's vice president's testimony demonstrates skycaps do non-tipped duties without minimum or living wage compensation.

C.     <u>Exclusion or Exemption from the Living Wage Ordinance.</u>

Plaintiffs state they are not excluded or exempted from the Ordinance.  As argued in Plaintiffs Motion for Partial Summary Judgment, the Living Wage Ordinance, Section 2-8.9 states: "[t]he Living Wage shall not apply to employees performing tip related

10

porter assistance services, including curbside check-in." Consequently, the Living Wage Ordinance countenances a tip credit regarding "curbside" services: such is logical as skycaps earn their tips through curbside services. Skycaps do not earn their tips through activities such as waiting in line at elevators to take bags to TSA pods on lower levels, organizing baggage at TSA pods, taking wheelchairs to wheelchair coordinators, pushing wheel chairs to departure gates, collecting and reconciling baggage fees for Asmo (an unrelated third-party), carrying baggage not received directly from passengers etc. The point is that non-tipped duties and tipped curbside duties are definable. These issues are issues of material fact for the jury to decide at the least. The jury needs to determine whether the Plaintiffs were and are performing jobs which are not "tip related" pursuant to Section 2-8.9. Further, it is an undisputed fact as set forth above that BRI (via the testimony of Mario Cantero) admitted Plaintiffs have performed duties subject to the living wage such as pushing wheelchairs (and were allegedly paid a prorated living wage) and are not paid for performing non-tipped duties such as those performed by the blue shirts.

Defendants cite case law regarding primary job duties, however, Plaintiffs refer to Subsection B(2) in of Plaintiffs' Motion for Partial Summary Judgment concerning non-tipped duties performed by the skycaps. Plaintiff ought be compensated for all minimum and living wages not paid during the performance of non-tipped duties. Plaintiffs argue that an excess of 20% of their time is spent on non-tipped duties; if Defendant disputes this, such is at least a contested genuine issue of material fact. Even more damaging to Defendants' Motion for Summary Judgment are the admissions by Mario Cantero that Defendants' have allegedly paid Plaintiffs prorated living wages for some non-tipped

11

duties such as wheelchairs while not paying same for other non-tipped duties such as those performed by the blue shirts.

Defendants attempt to argue the Living Wage Ordinance does not apply because Plaintiffs are not covered employees employed by a Service Contractor. As set forth in Plaintiffs' Statement of Material Facts filed with Plaintiffs' Motion for Partial Summary Judgment: Defendant BRI has a subcontracting relationship with a company called American Sales and Management (sometimes hereinafter referred to as "Asmo" or "ASMO"). Asmo contracts with American Airlines regarding the skycap labor force. BRI provides the labor force for Asmo. As Asmo is subject to minimum wage requirements such as the Miami-Dade Living Wage Ordinance, so are sub-contactors such as BRI. (Deposition of Victor Novoa, the Former Financial Auditor for the Office of the Inspector General's Deposition page 4, lines 20-22; page 15, lines 19-22); (deposition of Joseph Lorenzo, page 5, lines 2-3; page 4, lines 19-21). Therefore, the express language of the Ordinance permits Plaintiffs to bring a private cause of action because Plaintiffs are covered employees.

D.     Supplemental Jurisdiction as to claim for .50 cent per bag.

Plaintiffs refer to Defendants own cited case law to state that the .50 baggage claim does arise out of a common nucleus of operative facts. As set forth in Subsection B(3) of Plaintiffs' Motion for Partial Summary Judgment, Plaintiff are alleging prohibited tip-sharing on the part of Defendants. It is Plaintiffs' position that Defendants initially promised to pay Plaintiffs .50 cents per bag to assuage skycap discontent upon implementation of the $2 baggage fee which not only amounts to constructive tip sharing, but also resulted in skycaps being required to perform additional time-consuming non-

12

tipped duties such as collecting and reconciling baggage fees. Worse yet, the $2 baggage fee and time dedicated to collecting it was spent by Plaintiffs for Asmo's benefit—a non-employer of Plaintiffs which owned 100% of the baggage fee. The fact that the .50 cent per bag was offered is evidence directly relevant in this case, including to demonstrate that BRI was aware that it needed to attempt to rectify it violation of the minimum and living wage laws. Therefore, the .50 per bag promise is related to the FLSA claim and the Court can exercise supplemental jurisdiction over such a state law contractual issue. In citing case law such as *Lyon v. Whisman*, 45 F.3d 758 (3rd Cir. 1995), Defendants have not demonstrated an insufficient nexus in the case at bar regarding tip sharing, Plaintiffs' rates of pay and implementation of the bag fee interfered with Plaintiffs' ability to earn tips (which Plaintiffs state also resulted in additional non-tipped duties).

E.  <u>Non-occurrence of a Condition Precedent, state claims against Defendant Lorenzo, and discontinued employment.</u>

Defendants argue that any contractual obligations regarding the .50 cent per bag promise cannot stand due to failure of a condition of a condition precedent: namely that such obligation was contingent upon implementation of an adequate baggage tracking system. It is Plaintiffs' position that such an adequate system has been implemented. As set forth in Para. 45 of Defendants' Statement of Material Fact, "[w]hen systems errors were deemed within tolerable levels, Mr. Cantero directed that a fifty cent per bag bonus be paid…."

In addition, Plaintiffs' Statement of Material Facts filed with the Motion for Partial Summary Judgment states: The sky caps regularly collected $2.00 per bag, took all the collected money to concourse A for reconciliation, filled out a deposit slip, the entire process taking approximately 20- 30 minutes, (Plaintiff's Responses to

Defendants' Supplemental Set of Interrogatories question 15 for Nicholas Contis, Jacques Jean, Luis Mourino, Raimundo Revollo, Walter Guasp, Donald Wilcox, Frandceau Dujour, Juan Matos, and Carlos Puentes). Some of the sky caps opened and started up the computers at the start of each shift, taking approximately 15-20 minutes, (Supplemental Set of Interrogatories question 15 for Jacques Jean and Walter Guasp). Currently the computer logging system concerning the $2 per bag charge is a significant task Plaintiffs must perform. Perhaps the system is not perfect, but the system is in place and is utilized. In fact, Defendants use the system to collect alleged missing fees from Plaintiffs. In other words, if there is an error, Defendants rely on the system to determine how much a skycap must pay to BRI to make up for any loss. This matter is an issue of material fact which needs to be decided by a jury. Defendants initially implemented a faulty computer system to be utilized in a chaotic and disorganized environment that caused bags to be miscounted. Defendants then capitalized on their own mismanagement by alleging embezzlement and taking more money out of Plaintiffs' pockets. This material dispute must go to the jury, who will hear that Defendants system is currently implemented and has improved. There is no non-occurrence of a condition precedent; Defendants rely on the current computer system to determine if all bags are accounted for and require Plaintiffs to pay for any $2 fees allegedly missing.

      As to Defendant Lorenzo, the defense merely makes an unsubstantiated allegation that he is the improper Defendant without providing any facts or case law. Such is unable to pass summary judgment muster. In addition, case law demonstrates the term "employer" ought be interpreted more broadly under the Act than common law for remedial purposes. *See, e.g., Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2nd Cir.

1999); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991), *citing McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989); *Donovan v. Agnew*, 712 F.2d 1509, 1510 (1st Cir. 1983); *Falk v. Brennan*, 414 U.S. 190, 195 (1973).

Further, multiple employers may be responsible for compliance with the FLSA within one business organization. *See*, *Elliott Travel & Tours, Inc.,* 942 F.2d at 965; *Agnew*, 712 F.2d at 1510. "[B]oth the employing corporation and the individual responsible for operation thereof may be employers for purposes of the FLSA." *Figueroa v. America's Custom Brokers, Inc.,* 48 F.Supp.2d 1372, 1377 (S.D. Fla. 1999), *citing Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986). In the Eleventh Circuit, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel*, 803 F.2d at 637-38, *quoting Agnew*, 712 F.2d at 1511.

Although not exclusive factors, some factors in determining if an officer is personally liable as "involved in the day-to-day operations or hav[ing] some direct responsibility for the supervision of the employee", *Patel*, 803 F.2d at 638, include: 1) power to hire/fire; 2) supervising/controlling work schedules or conditions of employment; 3) determining rate and method of pay; and 4) maintaining employment records. *Herman*, 172 F.3d at 139. Financial control over a corporation is a significant factor in determining "employer" status. *See, Elliot Travel & Tours*, 942 F.2d 966 (6th Cir. 1991); *Donovan v. Grim Hotel Co*., 747 F.2d 966, 972 (5th Cir. 1984)(imposing FLSA liability on a "top man" who guided corporate policies and controlled "purse strings"); *Donovan v. Sabine Irrigation Co., Inc*., 695 F.2d 190, 193-95 (5th Cir.

15

1983)(liability for controlling finances and dominating the administration); *Dole v. Simpson*, 784 F.Supp. 538, 545-47 (S.D. Ind. 1991). Personal liability may also arise from significant ownership interest coupled with operational control. *See, Agnew*, 712 F.2d at 1514. Liability may also be found even if control is restricted or exercised only occasionally as such does not diminish the significance of the existence of such control. *Herman*, 172 F.3d at 139, *quoting*, *Donovan v. Janitorial Servs, Inc.,* 672 F.2d 528, 531 (5th Cir. 1982).

As set forth in the record, testimony from both Mario Cantero and Defendant Lorenzo demonstrate Lorenzo is a proper employer to sue as to both the federal claim and the state claim which arise from a common nucleus of facts previously discussed herein regarding supplemental jurisdiction. Plaintiffs note that both Cantero's deposition dated 4/25/07 and Lorenzo's deposition dated 6/18/07 have both been e-filed in their entirety previously with this Court.

Defendant Lorenzo, along with Cantero and Edgar Ramirez, is in charge of the operations and directions given to the Plaintiff skycaps (such "funnel[s]" down to Lorenzo), (deposition of Mario Cantero, vice president of operations for BRI, page 7, lines 5-16). Lorenzo is the "exclusive owner" of BRI, and maintains operational control over the day-to-day functions of BRI for at least the last 3 years, (deposition of Joseph Lorenzo, page 4, lines 1-7). Interestingly, Lorenzo is also on the board of directors of Asmo, and "customarily signed contracts" on Asmo's behalf (deposition of Joseph Lorenzo, page 5, line 18; page 34, lines 5-7). Such gives even more credence to Plaintiffs state claims for the .50 cents per bag promise, in that (as stated above) Asmo owns 100% of the baggage fee. Lorenzo is on both sides of the fence and therefore wields significant

influence over the $2 baggage fee which BRI requires the skycaps to collect for Asmo. On a day to day basis over the last 3 years, Lorenzo admitted that he checks through Cantero and other managers to ensure the skycaps do their jobs correctly, (deposition of Joseph Lorenzo, page 10, lines 2-9). Lorenzo fulfills the various afore-mentioned legal tests concerning individual employer liability: financial and operational control, management of the Plaintiffs, ownership and control of the company and involvement on a day to day basis. As indicated above, it is Plaintiffs' position that the baggage fee issue and the 50 cent promise arise from a common nucleus of facts regarding the FLSA claim, and Lorenzo is therefore liable for the federal claims, and also and state and municipal claims (as discussed the living wage's private cause of action is applicable in the case at bar) under supplemental jurisdiction.

Regarding Defendants' position that Plaintiffs Latronico and Rose were no longer employed when the .50 cents was promised, such is merely an issue regarding damages in this cause and has no bearing on the other 51 Plaintiffs.

## **CONCLUSION AND PRAYER**

WHEREFORE, THE PLAINTIFFS ASK THIS HONORABLE COURT TO DENY DEFENDANTS MOTION FOR SUMMARY JUDGMENT *IN TOTO*, AND ALSO MOVE THE COURT TO GRANT IN TOTAL PLAINTIFFS PENDING MOTION FOR PARTIAL SUMMARY JUDGMENT.

**Respectfully submitted,**

**K. DAVID KELLY, ESQ.**
**J.H. ZIDELL, P.A.**
**ATTORNEY FOR PLAINTIFF**
**300 71ST STREET, #605**
**MIAMI BEACH, FLA. 33141**
**PH: 305-865-6766**
**FAX: 305-865-7167**
**EMAIL: KRL_KELLY@YAHOO.COM**
**F.B.N. 0123870**
**BY:_____/s/ K. David Kelly_____**
**K. DAVID KELLY, ESQ.**

**CERTIFICATE OF SERVICE:**
**I HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOREGOING WAS PROVIDED TO THE FOLLOWING SUBSEQUENT TO E-FILING:**
**MARK BEUTLER, ESQ.**
**EPSTEIN BECKER & GREEN, P.C.**
**STE. 2100, WACHOVIA FINANCIAL CENTER**
**200 SOUTH BISCAYNE BLVD.**
**MIAMI, FL 33131**
**FAX: 305-982-1521**

**BY:_____/s/ K. David Kelly_____**
**K. DAVID KELLY, ESQ.**