UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 06-22738-CIV-MORENO

JASON A. PELLON, *et al.*,

    Plaintiffs,

vs.

BUSINESS REPRESENTATION INTERNATIONAL, INC. and JOSEPH C. LORENZO,

    Defendants.

_____/

**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DISMISSING PLAINTIFFS' REMAINING STATE LAW CLAIMS, AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Summary Judgment is **GRANTED** in favor of Defendants on the issue of alleged Fair Labor Standards Act tip credit violations resulting from: improper tip credit notice, Plaintiffs' performance of tasks outside of their prescribed job duties, and a constructive tip pooling arrangement resulting from a two dollar baggage service fee imposed by American Airlines. Furthermore, the Court will not exercise supplemental jurisdiction over Plaintiffs' state law contract claim pertaining to the service fee and any agreement between the parties regarding that fee, nor will it rule on any claim under the Florida minimum wage or living wage laws (except insofar as Plaintiffs rely on the latter to support its conception of proper skycap job duties under the FLSA). Therefore, those state law claims are **DISMISSED** with leave to refile in state court. Because the Court herein grants Defendants' Motion for Summary Judgment, Plaintiffs' Motion for Summary Judgment is **DENIED**.

**I.  BACKGROUND**

In this suit, 53 members of the "skycap" vocation working at Miami International Airport allege federal minimum wage violations by their employers, Business Representation International, Inc. ("BRI") and Joseph C. Lorenzo.[1]  In particular, Plaintiffs argue that Defendant BRI has claimed invalid tip credit against the minimum wage under the Fair Labor Standards Act ("FLSA"); Plaintiffs seek damages, including back pay at a full minimum wage rate, as a result.  Plaintiffs and BRI serve American Airlines passengers.  The primary duties of a skycap include meeting airline travelers at the curb and assisting them with their luggage.  The parties disagree about what other tasks should be performed by skycaps as a part of their job duties.  They also dispute whether Plaintiffs were adequately informed of Defendants' claim of a tip credit used toward Defendants' obligation to pay Plaintiffs minimum wage.  Finally, Plaintiffs take issue with Defendants' implementation and alleged promise to share American Airlines' two dollar per bag service fee.

Plaintiffs filed their motion for Partial Summary Judgment as to Tip Credit and Liability Regarding Hourly Wages and for the Imposition of Liquidated Damages **(D.E. No. 82)** on July 23, 2007.  Defendants filed their Motion for Summary Judgment **(D.E. No. 86)** on July 24, 2007.  Both motions have been fully briefed.

**II.  SUMMARY JUDGMENT STANDARD**

Summary judgment is authorized when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The burden of establishing the absence of a genuine issue of material fact lies with the moving party.  Celotex Corp.

---

[1] Plaintiffs also claim state minimum wage and Miami-Dade County Living Wage violations.

v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the party opposing the motion, who must set forth specific facts and establish the essential elements of his case on which he will bear the burden of proof at trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Inferences are drawn in favor of the non-moving party, but such inferences "must, in every case, fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." Thompson Everett, Inc. v. Nat'l Cable Advert., 57 F.3d 1317, 1323 (4th Cir. 1995). The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings." Fed. R. Civ. P. 56(c). Rule 56(e) mandates that a party moved against respond with affidavits, depositions, or otherwise, in order to reflect that there are material facts which must be presented to a jury for resolution. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-61 (1970). Conclusory allegations without specific supporting facts have no probative value. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) (citing Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir.1985)). A party resisting summary judgment "must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial." Id. (internal citations omitted). Thus, where the record could not support a finding by the trier of fact for the non-movant, there is no genuine issue for trial and summary judgment is appropriate. Matsushita, 475 U.S. at 587. Although there may be evidence somewhere within the non-moving party's submitted record that might create a genuine issue of material fact, "[t]he district judge is not required to comb the record to find some reason to deny a motion for summary judgment." Forsberg v. Pacific N.W. Bell Tel. Co., 840 F.2d 1409, 1418 (9th Cir.1988).

### III.  ANALYSIS

**A.  Tip Credit Notice**

The first issue the Court will address is whether BRI properly informed Plaintiffs that the company intended to take a tip credit against their wages under the FLSA.  The Court holds that Plaintiffs were sufficiently informed.

One of the primary purposes of the FLSA is to protect employees from substandard wages.  Prior to July 24, 2007, the federal minimum wage was $5.15.  29 U.S.C. § 206(a)(1).  Employers were permitted to pay a reduced wage as low as $2.13 if the difference was made up in tips.  The difference between the amount an employee must be paid under the minimum wage law and the amount directly paid to a tipped employee is commonly referred to as a "tip credit."  See 29 U.S.C. § 203(m); 29 C.F.R. § 531.51.  The tip credit is not an exemption; instead, it is set forth in the definition of the required minimum wage.  The following requirements must be met to satisfy Section 203(m): (1) the tip credit must be claimed for qualified tipped employees; (2) the employees must receive proper notice of Section 203(m); and (3) all tips received by the employees must be retained by them.  Elements (1) and (3) are not at issue in this case, so the question before the Court is the definition of proper notice under the tip credit provision.

Statutes are interpreted with the aim of giving effect to the drafters' intent, which initially entails examining the plain meaning of the statutory language.  Anderson v. Cagle's, Inc., 488 F.3d 945, 955 (11th Cir. 2007).  To do this, courts must look at statutory words' "ordinary, contemporary, common meaning."  Id. (internal citations omitted).  The FLSA has both an "Exemptions" section, 29 U.S.C. § 213, and a "Definitions" section, 29 U.S.C. § 203.  Exemptions are to be construed strictly against employers, but the Eleventh Circuit has held that that is not the case with Section

203(o), which addresses changing clothes under the definition of "Hours Worked." Id. at 955-56. If the Eleventh Circuit applies an ordinary meaning analysis to a term used under Section 203(o), then surely this Court must apply the same analysis to a term used under Section 203(m). Therefore, the Court will not adhere to other jurisdictions' imposition of a higher level of scrutiny on the definition of Section 203(m) because it would be contrary to Eleventh Circuit precedent.

Relevant to the case at hand, the Court must address what is required for employees to be "informed by the employer of the provisions of this subsection," namely the tip credit provision. 29 U.S.C. § 203(m). Essentially, an employer must inform its employees that it intends to treat tips as satisfying part of the employer's minimum wage obligations. Kilgore v. Outback Steakhouse of Florida, Inc., 160 F.3d 294, 298 (6th Cir. 1998). "Employers do not have to 'explain' the tip credit to employees, however; it is enough to 'inform' them of it." Chan v. Triple 8 Palace, Inc., No. 03 Civ. 6048(GEL), 2006 WL 851749, at *19 (S.D.N.Y. 2006) (citing Kilgore, 160 F.3d at 298-300). To "inform" an employee requires less effort than it would to "explain" the tip credit to the employees. Kilgore, 160 F.3d 294, at 298. One court addressing skycaps in particular held that explaining to the plaintiffs that they would receive $2.13 per hour and the remainder of their pay would be in tips satisfied the notice requirement of 29 U.S.C. § 203(m). Hardwick v. Complete Skycap Servs., Inc., 04-CV-88 (D. Ariz. 2005), aff'd, No. 05-16422, 2007 WL 2050867 (9th Cir. July 13, 2007). Department of Labor regulations explicitly require employers to post "a notice explaining the [FLSA minimum wage provisions]." 29 C.F.R. § 516.4. Because it would defy logic to require the display of inadequate information regarding the minimum wage and employer tip credit, a prominently displayed poster using language approved by the Department of Labor to explain 29 U.S.C. § 203(m) is sufficient notice.

The Court follows Judge Patricia A. Seitz's decision in Thomas v. J.R. Eight, Inc. as it pertains to the sufficiency of tip credit notice. See No. 01-1067-CIV-SEITZ (S.D. Fla. 2002) (D.E. No. 63). In Thomas, Judge Seitz ruled that verbal notice given to the plaintiff that he would be paid $2.13 plus tips, combined with a prominently displayed poster concerning the tip credit qualified as adequate notice and summary judgment was appropriate. The facts of this case are very similar regarding the issue of notice. The poster in Thomas was the same type as Defendants in this case have posted. Moreover, Plaintiffs were orally informed that their salary would be $2.15 (or more) plus tips and their paychecks informed them of their salary twice a month. Finally, Plaintiffs concede that the poster alone was adequate notice in Thomas. (Pls.' Reply to Defs.' Resp. in Opp'n to Pls.' Mot. For Summ. J., at 5.)

A copy of the information contained in the poster at issue was attached to the Declaration of Nancy Duran submitted by Defendants. Ignoring the Declaration, Plaintiffs insist that "despite requests" Defendants have "failed to provide Plaintiffs' counsel with a copy of the poster(s) allegedly displayed." This is, of course, the poster that Plaintiffs walk by multiple times a day every day that they work. Regardless, Plaintiffs have provided no valid evidence refuting the Duran Declaration or the evidence contained therein. Plaintiffs attempt to rely on the deposition testimony of Renee Leonardo Velasquez that he does not recall the poster information to refute the holding in Thomas that a prominently displayed poster conveyed notice of the tip credit to the restaurant's employees. Such testimony is insufficient to avoid summary judgment. As the Court set forth in its Order Granting Defendants' Motion to Strike **(D.E. No. 133)**, a witness' statement that he "does not recall" information contained in a poster is insufficient to refute record evidence unequivocally establishing the matter. See Posey v. Skyline Corp., 702 F.2d 102, 105-06 (7th Cir. 1983); English v. Pabst

Brewing Co., 1047, 1049-50 (4th Cir. 1987).

Plaintiffs cite no law that indicates that a prominently displayed poster containing all of the relevant tip credit information is insufficient notice. Plaintiffs would have the Court rely on <u>Bonham v. Copper Cellar Corp.</u> for the proposition that a displayed poster alone does not satisfy the notice requirement. 476 F. Supp. 98, 101-02 (E.D. Tenn. 1979). At best, Plaintiffs mischaracterize the holding of that case, which dealt with facts that were clearly distinct from the case at hand. In <u>Bonham</u>, a poster containing "some or all" of the relevant information "**apparently** was hanging somewhere in the defendant's restaurant." <u>Id.</u> at 101 n.6 (emphasis added). Furthermore, evidence showed that the poster "was **not prominently displayed**, employees were not directed to it and its **contents were not introduced at trial**." <u>Id.</u> (emphasis added). Under "[those] circumstances, the poster did not satisfy the notice requirement" according to the court. <u>Id.</u> As the Sixth Circuit commented in <u>Kilgore</u>, "Had the poster's content been introduced into evidence, and had it been prominently displayed, then Subsection (m)'s notice requirement would have been satisfied. Otherwise, the <u>Bonham</u> Court's discussion of these failings would have been pointless." 160 F.3d at 299. In this case, there were two prominently displayed posters, located in areas that each of the plaintiffs passed every day. Additionally, the precise information contained in the poster has already been submitted on the record with no valid refutation.

Plaintiffs' reliance upon <u>Reich v. Chez Roberts, Inc.</u> is likewise misplaced. First of all, the district court in that case found that the defendants had willfully violated the FLSA. 821 F. Supp. 967, 976 (D.N.J. 1993). Furthermore, the court found that three conditions had to be met before an employer could reduce the amount paid to an employee under the tip credit: "(1) The employer must inform each employee that a minimum wage is required by law. (2) The employer must inform each

employee of the dollar amount of the minimum wage. And (3), The employee must actually keep the tips he or she receives." Id.  When they were hired, the employees in Reich were told that they would be paid $2.01 per hour, but **not** that the minimum wage was $3.35 per hour or that the deduction was allowed by law when tips supplement the reduced wage rate. Id. at 977.  The district court determined that a tip credit deduction was inappropriate in that case, but it did not address the sufficiency of poster notice. Id.  In this case, requirements (1) and (2) listed in Reich were met in by the poster alone and Plaintiffs kept all of their tips, satisfying the third requirement.

The Third Circuit in Reich vacated the district court's opinion, but merely found that the district court could not reduce the damage award given to the plaintiffs based on equity to account for tips actually received.  28 F.3d 401, 404 (3d Cir. 1994).  The only issue the Third Circuit ruled on was whether the district court erred by reducing the back wage awards from the amounts the court found was otherwise owed.  Id.  That has no bearing whatsoever on this case.

Finally, Plaintiffs' reliance on Martin v. Tango's Restaurant is misplaced. 969 F.2d 1319 (1st Cir. 1992).  In that case, no notice of the tip credit was given to the waiters. Id. at 1323.  To the extent that the Martin court discusses what would be required if there had been any notice whatsoever, this Court cannot say with certainty how the Martin court would have ruled.

Contrary to Plaintiffs' argument, the FLSA does not require a rigorous explanation to employees about how the tip credit works.  In fact, such an explanation would serve no logical purpose.  Provided that the employees are advised and receive a wage plus tip amount equal to minimum wage or higher (and the Court does not see in the record that Plaintiffs have earned less than minimum wage in their adjusted wage rate plus tips), they do not need to understand how the statutory mechanism applies to their employer.  In fact, "employee understanding" would be an

untenable legal standard in cases such as this one.

Summary Judgment is **GRANTED** as to the issue of Tip Credit Notice in favor of Defendants.

**B. Job Duties**

Next, the Court addresses the proper job duties of a skycap, and whether Plaintiffs have performed non-tipped, non-skycap duties and should be further compensated for time spent on such duties.[2] The Court holds that all of the duties complained of by Plaintiffs are skycap duties directed toward receiving tips or incidental to receiving tips, and further that Plaintiffs do not have "dual jobs" within the meaning of the Labor Regulations.

Without law directly addressing skycaps, the Court is left to analogize from sources addressing other specific tipped occupations and tipped occupations in general. To begin with, the FLSA defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. 203(t). This is not a difficult threshold to cross; Plaintiffs clearly qualify.

Department of Labor Regulations addressing Payment of Wages to Tipped Employees outline situations in which tipped employees must perform certain tasks that do not generate tips and when employees are considered to have "dual jobs." See 29 C.F.R. 531.56(e). The Department of Labor

---

[2] The etymology of "skycap" traces back to the "redcap," which is a porter at a railroad station. Defendants, perhaps tongue-in-cheek, refer to the word skycap as a "portmanteau," which blends two words, "sky" and "redcap," and their meanings together into one new word, but which literally speaking is a large variety of suitcase. The common meaning of "skycap" is "a porter who helps travelers with their luggage at an airport." The American Heritage Dictionary of the English Language (4th ed. 2004), available at http://dictionary.reference.com/browse/skycap. A "skycap" is also defined as "a porter who handles baggage and wheelchairs at an airport." Kenneth G. Wilson, The Columbia Guide to Standard American English (1993), available at http://www.bartleby.com/68/30/5530.html.

distinguishes a waitress, who must spend "part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses," from a person dually employed as a waiter and maintenance man. The latter is a tipped employee only with respect to his employment as a waiter. Moreover, an employee who customarily and regularly receives tips still does not need to receive them constantly. 29 C.F.R. § 531.57.

It is clear to the Court that skycaps are most similar to waitresses under Department of Labor regulations, even taking the facts in the light most favorable to Plaintiffs. The Wage and Hour Division has clarified that Section 531.56(e) contemplates a "clear dividing line" between tipped and non-tipped duties wherein no tip credit can be claimed for the non-tipped duties. U.S. Department of Labor, Wage and Hour Division Letter, WH-502, 1980 WL 141336 (March 28, 1980). The duties that Plaintiffs have performed in this case are not those of another occupation, even if there is some overlap among tasks between different occupations. They are, at worst, "related duties in an occupation that is a tipped occupation" and they "need not by themselves be directed toward producing tips." 29 C.F.R. 531.56(e); see also Townsend v. E.G.-Meridian, Inc., No. CIV-04-1162-F, 2005 WL 2978899, at *6-7 (W.D. Okla. 2005) (The plaintiff waitress performed duties of cashiers and phone order receptionists, but still did not qualify for their non-tipped wage because such duties were "merely related duties incident to her waitress position."). In Townsend, the defendants were entitled to apply tip credit to the entirety of the plaintiff's waitress shifts, not just those hours spent directly serving tables. Because Plaintiff skycaps do not have dual jobs, the same is true here. Plaintiffs do not refute or otherwise distinguish 29 C.F.R. 531.56(e) from their case.

Plaintiffs do cite one case that suggests that performing some non-tipped duties means that they should be paid a higher wage while performing those duties. See Dole v. Fred Bishop & Carol

Bishop, 740 F. Supp. 1221, 1228 (S.D. Miss. 1990) ("Because [the] cleaning and food preparation duties were not incidental to the waitresses' tipped duties, the waitresses were entitled to the full statutory minimum wage during these periods of time."). Dole may be inconsistent with 29 C.F.R. 531.56(e), but in any event it is distinguishable from this case. That case dealt with a situation in which the time spent performing non-waitress duties occurred before the restaurant opened and was easily separable from the time performing waitress duties. In this case, the tasks that allegedly violate the minimum wage are intertwined with direct tip-producing tasks throughout the day.

Plaintiffs further rely on Fast v. Applebee's International Inc. for the proposition that an employee's duties incidental to direct tipped duties may not exceed 20% of their time without the employee being compensated with at least minimum wage for that period of time. 502 F. Supp. 2d 996, 1002-03 (W.D. Mo. 2007). However, a determination whether 20% (or any other amount) of a skycap's time is spent on non-tipped duties is infeasible. In fact, several of the plaintiffs themselves have admitted that dividing their workday among the various tasks they perform is impractical or impossible.

Permitting Plaintiffs to scrutinize every day minute by minute, attempt to differentiate what qualifies as tipped activity and what does not, and adjust their wage accordingly would create an exception that would threaten to swallow every rule governing (and allowing) for tip credit for employers. First of all, ruling in that manner would present a discovery nightmare. Of greater concern is the fact that under the reasoning proffered by Plaintiffs, nearly every person employed in a tipped occupation could claim a cause of action against his employer if the employer did not keep the employee under perpetual surveillance or require them to maintain precise time logs accounting for every minute of their shifts. The threshold issues are also unsolvable: for instance, how far from

the curb could Plaintiffs even walk before they are too far to be considered tipped employees for that period? Plaintiffs already raise issue with how far they have to carry bags when they actually receive tips to handle such baggage.

Regardless, such a determination is unnecessary under these facts. Fast and the Department of Labor's Field Operations Handbook upon which it relies only apply the 20% exception where "tipped employees spend a substantial amount of time … performing general preparation work or maintenance." Id. at 1002. The overwhelming majority of tasks complained of by Plaintiffs in this case do not qualify as general preparation work or maintenance even if the Court found the Fast case persuasive. Furthermore, Plaintiffs have offered no evidence that their non-skycap duties even constitute more than 20% of the workday, instead relying on blanket assertions from only a few of the 53 Plaintiffs. As stated above, conclusory allegations without specific supporting facts have no probative value. Leigh, 212 F.3d at 1217 (citing Evers, 770 F.2d at 986); see also Forsberg, 840 F.2d at 1418.

Finally, viewing the facts in the light most favorable to Plaintiffs, the Court still finds that every task Plaintiffs complain of are part of the normal duties of a skycap. The National Mediation Board has essentially agreed that skycap duties includes transporting baggage, assisting handicapped passengers, and keeping the baggage claim area and check-in areas clean. See In re Air Line Employees Assoc., Int'l, No. R-4549, 6 NMB 703, 714 (1979) (accepting the definition contained in Trans World Airlines' job description of a skycap); see also In re Kanonn Serv. Enters. Corp., No. CJ-6845, 31 NMB 409, 412 (2004) ("Kanonn employs approximately 70 skycaps who provide … transport of disabled passengers in wheelchairs…."). Plaintiffs have not contradicted deposition

testimony to the effect that skycaps at United States airports perform every task complained of by Plaintiffs as a regular part of their job. Collecting the two dollar per bag service fee is a natural offshoot of Plaintiffs' other baggage related duties. Accounting for money collected and traveling around the airport to accomplish tasks are likewise normal aspects of the job. There is also record evidence that many tasks, such as transporting luggage to Transportation Security Administration ("TSA") agents for screening and assisting disabled passengers, were performed by many of the plaintiffs at their previous places of employ. Therefore, the Court finds that all of the following significant tasks properly fall within the skycap occupation: (a) transporting luggage to TSA screening locations; (b) assisting disabled passengers; (c) charging passengers for overweight and extra baggage; (d) collecting and reconciling baggage fees. Furthermore, the other minor tasks complained of by some or all of the plaintiffs are also skycap duties and do not establish dual jobs.[3]

The Court sets forth these findings regardless of whether or not some tasks are also performed by other employees at the airport. There is no evidence that the fact that other employees perform some of the same tasks that those tasks do not also belong to skycaps. Moreover, there is evidence that wheelchair agents are also tipped employees anyway. Skycaps assist passengers with their luggage, and most of these tasks directly stem from that customer interaction. The vast majority of Plaintiffs' time spent at their job directly results in tips or is incidental to and stems from

---

[3] Various plaintiffs allege that non-skycap duties also include: (a) turning on the computer at the start of the shift; (b) clearing the printer when it jams; (c) rebooting the computer; (d) examining passenger identification documents (e.g, drivers licenses and passports); (e) stocking skycap podium with ticket jackets and baggage tags; (f) setting up scales near the skycap podium; (g) securing scales at the end of the shift; (h) reporting tips at the end of the shift; (i) walking to and from the office inside the airport terminal; (j) walking to and from the time clock to punch in or out; (k) locking up or securing skycap podium at the end of the shift; (l) securing the cart used by skycaps at the end of the day; (m) explaining charges to passengers; (n) explaining the fees assessed to passengers and responding to passengers' questions; and (o) explaining to newlyhired coworker various aspects of the job.

activity that directly results in tips. If bus boys, who presumably interact with customers only on a limited level, and hosts, who as in Kilgore may not ever directly receive tips, can qualify as tipped employees despite not receiving tips directly, then certainly skycaps qualify even if not every task they perform directly results in tips. See Kilgore, 160 F.3d at 300-302. Plaintiffs unquestionably have more than a *de minimis* interaction with customers. See Id. at 301. Only where employees have no customer contact have they been found to fall outside the definition of tipped employees. See Myers v. Copper Cellar Corp., 192 F.3d 546, 550 (6th Cir. 1999).

Summary Judgment is **GRANTED** as to the issue of Skycap Job Duties in favor of Defendants.

**C. The Two Dollar Bag Fee**

Tips are clearly defined by the Department of Labor. The two dollar baggage service fee imposed by American Airlines and enforced by BRI does not qualify as a tip, as seen below:

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of his gratuity. In the absence of an agreement to the contrary between the recipient and a third party, a tip becomes the property of the person in recognition of whose service it is presented by the customer. Only tips actually received by an employee as money belonging to him which he may use as he chooses free of any control by the employer, may be counted in determining whether he is a "tipped employee" within the meaning of the Act and in applying the provisions of section 3(m) which govern wage credits for tips.

29 C.F.R. § 531.52. The two dollar fee in this case is not gratuitous, discretionary for the customer, or kept and used by the recipient. Moreover, the alleged agreement to pay 50 cents to the skycaps

for every two dollars collected does not constitute a tip sharing agreement.

Relying on 29 C.F.R. § 531.52 and § 531.55(a), the Department of Labor has proclaimed that even service charges in the form of imposed gratuity do not count as tips. U.S. Department of Labor, Wage and Hour Division Opinion Letter, No. FLSA2005-31, 2005 WL 3308602 (September 2, 2005). If employees receive additional gratuity in an amount of at least $30 per month, then they can be considered tipped employees and the tip credit can be claimed by their employer. Id. The two dollar fee in this case is similar to the situation encountered by parking valets when they work for a company that charges a fee for the valets' services. These valets are still entitled to, and frequently still receive tips. BRI submits, and Plaintiffs do not protest, that only discretionary tips are used to satisfy their tip credit. The tips reported by Plaintiffs still exceeded the maximum amount of $3.02 per hour that could at the time relevant to this case be credited to the minimum wage.

Chan v. Sung Yue Tung Corp., cited by Plaintiffs, is an anomalous decision that found that a 15% service charge was a tip. No. 03 Civ. 6048(GEL), 2007 WL 313483 (S.D.N.Y. Feb. 1, 2007). However, the facts of that case suggest that the restaurant referred to the service charge as a tip and treated as such for income tax purposes. Moreover, the facts are very different from the case at bar. In this case, a sign indicated that gratuity was not included, passengers were not told that that the fee was a tip, skycaps were required to separately account for the fees, and passengers left tips beyond the fee. Simply because the fee system instituted by American Airlines may divert tips from Plaintiffs does not mean that it is a constructive tip-sharing arrangement. Chung v. The New Silver Palace Restaurant, Inc., 246 F. Supp.2d 220 (S.D.N.Y. 2002), is inapposite. In that case, people who possessed ownership interest in the employer's business participated in the plaintiff waiters' tip pool.

Here, not only is there no pooling arrangement, but the fee does not constitute a tip.

Summary Judgment is **GRANTED** as to the issue of the Service Fee in favor of Defendants.

**D. Remaining State Law Claims**

Given that the Court has granted Summary Judgment for Defendants on Plaintiffs' federal FLSA claims, it cannot exercise supplemental jurisdiction over Plaintiffs' state law claims. Plaintiffs' service fee claim may be a valid state law claim insofar as there was an alleged agreement between Plaintiffs and Defendants to share part of the fees collected, but the Court does not accept Plaintiffs' constructive tip-pooling argument under the FLSA. Moreover, the Court cannot exercise jurisdiction over any state minimum wage or Living Wage claims.[4] Plaintiffs have not sufficiently alleged federal jurisdiction over such claims. See Luftfahrversicherungs-Aktiengesellschaft v. Merkel Ins. Co., 06-61184-CIV-COHN, 2007 WL 141154, at *1 (S.D. Fla. 2007) ("the party seeking the exercise of federal jurisdiction bears the burden of proof with regard to establishing federal jurisdiction") (citing Miedema v. Maytag Corp., 450 F.3d 1322, 1328 (11th Cir. 2006)). A federal court must dismiss a case upon determining that it lacks of subject matter jurisdiction. See Goodman v. Sipos, 259 F.3d 1327, 1331 (11th Cir. 2001). Plaintiffs' state law contract claims are therefore

---

[4] The Miami-Dade County Living Wage Ordinance does not appear to apply to Plaintiffs in this case, as it clearly states that the Living Wage does not apply to "employees performing tip-related porter assistance services, including curbside check-in." Miami-Dade County, Fl., Code of Miami-Dade County § 2-8.9 (1999), at Definitions (F)(2)(B). Skycaps, by their very definition, fall squarely within the designation of porters. See supra Part III.B. and note 2. Further, there is no question that Plaintiffs are employees performing tip-related services, including curbside check-in. To the extent that Plaintiffs argue that they perform tasks outside of this exception and should be compensated at a higher wage, the Court notes that the Ordinance does not distinguish between how a tipped porter assistance employee divides his time between tasks that generate tips and those that do not. In other words, there is no mention of requisite percentages of time spent performing tip-related versus non-tip-related services as it pertains to Living Wage application. Essentially, the Ordinance appears to offer no support for Plaintiffs' conception of the duties that inhere to the skycap occupation or Plaintiffs' argument against Defendants' claim to a tip credit under the FLSA.

**DISMISSED** with leave to refile in state court.

DONE AND ORDERED in Chambers at Miami, Florida, this 17 day of December, 2007.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record